VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org



Case No.    22-AP-243

*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant. Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

FEBRUARY TERM,   2023

In re S.R., Juvenile*
}
}
]
}

APPEALED FROM:
Superior Court, Franklin Unit,
Family Division
CASE NO. 21-JV-01310
Trial Judge: Mary L. Morrissey

In the above-entitled cause, the Clerk will enter:

Juvenile S.R., born in March 2008, appeals a family division order terminating the parental rights of his adoptive parents at initial disposition. On appeal, juvenile argues that the family division applied an incorrect legal standard, and that termination was not in his best interests. We affirm.

The family division found the following by clear and convincing evidence. In 2017, parents adopted S.R. and his half-brother. In November 2018, the State filed petitions alleging that S.R. and his half-brother were children in need of care or supervision (CHINS) based on concerns that parents had slapped and spanked the children. The court granted custody to the Department for Children and Families (DCF). After parents worked with providers, the children were returned to parents' custody. DCF became involved with the family again in 2021 due to reports that S.R. was engaging in unsafe behaviors, including self-harm, running away, and not attending school. Parents indicated that they could not safely keep S.R. in their home or meet S.R.'s needs. The State filed a CHINS petition as to S.R. in September 2021, and in October 2021, parents stipulated to the merits of the petition. No CHINS petition was filed related to S.R.'s half-brother, who continued to live with parents. Although the initial case plan had concurrent goals of adoption and reunification, the court did not approve it because parents did not agree with a goal of reunification. Parents sought termination of their parental rights and were unwilling to engage in services or have S.R. return to their home. DCF changed the case-plan goal to termination.

S.R. has a complex trauma history, has engaged in self-harm, and has exhibited anxiety. At the time of the final hearing, he was in a foster home where he was supported and comfortable. His foster mother was a strong advocate for him but not a pre-adoptive placement. S.R. was reluctant to work with crisis supports but received mental-health support and school support. S.R. acknowledged that he could not return to parents' home but opposed termination because he sought contact with his half-brother.

The State filed a petition to terminate parents' rights at initial disposition. S.R. objected. Neither parent appeared at the termination hearing, and both indicated through counsel that they agreed with the termination petition. The family division granted termination, concluding that it was in S.R.'s best interests. The court found that parents had effectively withdrawn from S.R.'s life, had not contacted S.R., and had not participated in decisionmaking related to S.R. S.R. had no relationship with parents, and S.R. was not able to return to their home. S.R. felt comfortable in his current placement and was working on his mental health. The family division considered the importance of S.R.'s relationship with his half-brother, recognizing that the lack of contact had caused S.R. to worry and that contact would be in S.R.'s best interests if it could be done safely. The court concluded, however, that there was no relationship with parents, parents remained unchanged in their request to terminate parental rights, and that termination was in S.R.'s best interests. S.R. appeals.

On appeal, S.R. does not challenge the family division's findings. S.R. argues that the family division committed legal error by failing to apply the statutory best-interests factors more strictly. S.R. contends that the family division should have engaged in the best-interests analysis at initial disposition in a substantively different manner that put more emphasis on preserving the family unit, in particular S.R.'s relationship to his half-brother.

Certainly, as S.R. notes, one of the purposes of the juvenile-judicial-proceedings act is "to preserve the family and to separate a child from his or her parents only when necessary to protect the child from serious harm or in the interests of public safety." 33 V.S.A. § 5101(a)(3). This purpose is balanced with other goals, including providing "for the care, protection, education, and healthy mental, physical, and social development of children," and ensuring "safety and timely permanency for children." See id. § 5101(a)(1), (4). The Legislature accordingly provided a legal framework, which incorporates all of these purposes, and which is well-settled. This Court has long held that the family division may terminate parental rights at the initial disposition proceeding if the court finds by clear and convincing evidence that termination is in the child's best interests. In re J.T., 166 Vt. 173, 177, 179 (1997). In assessing the child's best interests, the family division must consider the statutory criteria. 33 V.S.A. § 5114. To be sure, the assessment of a child's best interests includes consideration of the familial relationships, including with siblings, but there is no support for S.R.'s argument that a heightened or different standard should have applied in this case. The statutory framework is clear, and the family division properly applied the law.

In assessing the best-interests factors, the court addressed S.R.'s important relationships, connection to his half-brother, and that contact should occur if possible. The family division weighed this consideration against its other findings, including that S.R. had no relationship with his parents, parents did not participate in the CHINS proceeding or engage in services, parents did not want S.R. returned to their care, and parents would not be able to resume parental duties within a reasonable time. Moreover, S.R. had urgent mental-health needs that were being met by his foster parent, and S.R. was connected to his current community, school, and mental-health providers. That S.R. disagrees with how the family division weighed all the considerations related to his best interests does not amount to legal error. In re S.B., 174 Vt. 427, 429 (2002) (mem.) (explaining that this Court will not "second-guess the family court or . . . reweigh the evidence"). The family division correctly applied the law and acted within its discretion in weighing the statutory factors and concluding that termination was in S.R.'s best interests, despite his opposition. See id. at 429-30 ("Upon review of the record, we conclude that the court acted within its discretion in terminating mother's parental rights with respect to S.B.,

notwithstanding S.B.'s stated opposition to termination and her desire to reunite with her mother.").

There is no merit to S.R.'s contention that the family division's application of the best-interests factors amounted to a denial of due process because there was no finding of parental unfitness. S.R. contends that termination was improper because the court did not first attempt to require parents to engage in reunification services and the State failed to prove that "no reasonable possibility existed that the parents would remain unwilling to allow [S.R.] to return to the family home." S.R. asserts that although parents repeatedly indicated that they did not want to reunify, the family division should have required parents to engage in services and this might have changed their feelings.

The family division was not required to compel parents to engage in services prior to terminating parental rights. As outlined above, when faced with the termination petition, the family division properly focused on the statutory best-interests factors, which included assessing whether parents would be able to resume parenting within a reasonable time. 33 V.S.A. § 5114(a)(3). Based on its findings that parents had withdrawn from contact with S.R. and had refused to engage in services or try to understand S.R.'s mental and emotional needs, the court concluded that there was no possibility that parents would be able to resume parenting within a reasonable time.

In addition, there was no denial of due process here. This Court has previously explained that constitutional due process is satisfied in termination proceedings by analyzing the statutory best-interests factors using a clear-and-convincing-evidence standard. See In re D.C., 2012 VT 108, ¶ 22, 193 Vt. 101 ("The Vermont Legislature has chosen the best-interests criteria contained in 33 V.S.A. § 5114(a), which encompass both directly and indirectly the question of parental fitness."). The family division was not required to make a separate and independent finding of unfitness.

Affirmed.

BY THE COURT:

Paul L. Reiber, Chief Justice

William D. Cohen, Associate Justice

Nancy J. Waples, Associate Justice

3